Opinion for the court filed by Circuit Judge RADER.
Dissenting opinion filed by Circuit Judge NEWMAN.
RADER, Circuit Judge.
The United States District Court for the District of New Mexico dismissed STC.UNM’s (STC) suit against Intel Corp. for infringement of U.S. Patent No. 6,042,-998 (’998 patent) for lack of standing. The district court held that STC could not maintain its suit because non-party Sandia Corp. is a co-owner of the patent, had not voluntarily joined as a co-plaintiff, and could not be involuntarily joined. Because, “as a matter of substantive patent law, all co-owners must ordinarily consent to join as plaintiffs in an infringement suit,” Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456, 1468 (Fed.Cir.1998), and because Sandia cannot be involuntarily joined under Federal Rule of Civil Procedure 19, this court affirms.
I.
The background of this case begins with U.S. Patent No. 5,705,321 (’321 patent). The invention disclosed in the '321 patent resulted from contributions of four people: Steven Brueck, Saleem Zaidi, An-Shyang Chu, and Bruce Draper. J.A. 25. At the time of invention, Brueck, Zaidi, and Chu were employed by the University of New Mexico (UNM). Id. Draper, however, was employed by Sandia. Id. The applicants filed their patent application on June 6, 1995, which issued as the '321 patent on January 6, 1998. The patent carries the title “Method for Manufacture of Quantum Sized Periodic Structures in Si Materials.” The '321 patent claims technology similar to that disclosed in the asserted '998 patent. See J.A. 252-53.
*942 In mid-1996, the four inventors executed a Joint Assignment to UNM of the invention disclosed in the application that issued as the '321 patent (’321 Assignment). J.A. 436-41. The '321 Assignment erroneously defined all assignors as “employees of the University of New Mexico.” J.A. 436. Draper was not employed by UNM. UNM was the named assignee. Id. In pertinent part, the '321 Assignment reads:
Assignors do hereby sell, assign, and transfer unto Assignee all their right, title, and interest in and to the invention ... and their entire right, title, and interest in and to any and all Patents which may be issued thereon ... and in and to any and all divisions, reissues, continuations, and extensions thereof.

Id.

In October 1996, UNM executed an assignment to Sandia to correct Draper’s prior assignment to UNM, which “was made in error” (Draper Assignment). J.A. 444. The Draper Assignment referenced the invention that led to the '321 patent and explicitly transferred to Sandia “those rights and interests previously assigned to [UNM] by Bruce Draper ... and to any and all Patents which may be issued thereon ... and to any and all divisions, reissues, continuations, and extensions.” Id.
While the application that led to the '321 patent was pending, Brueck and Zaidi (two of the named '321 inventors working for UNM) continued their research. J.A. 25. On September 17, 1997, they filed the application that led to the '998 patent, titled “Method and Apparatus for Extending Spatial Frequencies in Photolithography Images.” The application incorporated the '321 patent by reference, but did not claim priority to any earlier-filed application. The record shows that Sandia’s employee, Draper, was not listed as an inventor to the '998 patent and had no inventive contribution to any claim in the patent. J.A. 26. UNM obtained assignments from both Brueck and Zaidi for the '998 patent. J.A.5.
During prosecution of the '998 patent, the U.S. Patent and Trademark Office (PTO) twice rejected its claims for double patenting over the '321 patent, which shared two common inventors. The examiner stated that “[t]he subject matter claimed in the instant application is fully disclosed in the ['321] patent and is covered by the patent since the patent and the application are claiming common subject matter.” J.A. 252-53, 263-64. To overcome these double-patenting rejections, UNM filed a terminal disclaimer, which specified that “any patent granted on this instant application shall be enforceable only for and during such period” that the '998 and '321 patents “are commonly owned.” J.A. 274. In the terminal disclaimer, UNM stated that it was “the owner of record of a 100 percent interest in the instant application.” Id. The '998 patent issued on March 28, 2000.
In July 2002 and August 2007, respectively, UNM assigned its own interest in the '321 and '998 patents to STC—a wholly-owned licensing arm of UNM. J.A. 25. In 2008, STC successfully petitioned the PTO to correct the inventorship of the '998 patent to include two more named inventors—Steve Hersee and Kevin Malloy. J.A. 315-27. Hersee and Malloy were employees of UNM at the time of invention and assigned their interests in the '998 patent to- UNM. J.A. 25.- Also in 2008, STC successfully sought a certificate of correction from the-PTO to indicate that the '998 patent is a continuation-in-part of the '321 patent. J.A. 328-35.
STC filed the present infringement suit concerning the '998 patent against Intel on November 15, 2010. J.A. 110. Although Sandia has had an ownership interest in the '321 patent since October 1996 through *943 the Draper Assignment, Sandia had never claimed any interest in the '998 patent. See J.A. 414. STC and Sandia’s relationship also reflected this understanding. For example, in 2009, STC and Sandia entered into a royalty-sharing “Commercialization Agreement” for the '321 patent, which does not mention the '998 patent. J.A. 880-82.
STC had also on multiple occasions held itself out to be the sole owner of the '998 patent. For instance, STC filed its requests with the PTO in 2008 as the sole “owner of record.” E.g., J.A. 274. STC had also filed multiple suits asserting the '998 patent without joining Sandia. See J.A. 340, 351. Further, STC had entered licenses with other parties on the '998 patent without sharing any royalty proceeds with Sandia. See J.A. 344, 359-68.
During discovery in the present litigation, non-party Sandia indicated that it believed it had no ownership interest in the '998 patent. Intel then asserted that STC could not enforce the '998 patent under the terms of the terminal disclaimer, which required identical ownership of both the '321 and '998 patents. J.A. 274, 458-59. In response, STC contended (as it does on appeal here) that Sandia did in fact co-own the '998 patent since it issued by operation of the Draper Assignment. Alternatively, Sandia obtained ownership of the '998 patent when it formally became a continuation-in-part of the '321 patent. Nevertheless, in December 2011, out of “an abundance of caution,” STC “confirm[ed] the prior [Draper] [Assignment” and “assign[ed] an undivided interest in each of’ the '321 and '998 patents to San-dia (2011 Assignment). J.A. 460.
II.
In January 2012, Intel moved for summary judgment, asserting that the '998 patent was unenforceable for failing to comply with the common-ownership requirement of the terminal disclaimer. STC contended that the language of the Draper Assignment from UNM to San-dia—specifically, the terms “the invention” and “issued thereon”—operated automatically to give Sandia an interest in the '998 patent the moment it issued. J.A. 10. Alternatively, STC relied on the Draper Assignment, which gave Sandia an interest in “any and all divisions, reissues, continuations, and extensions thereof.” STC claimed that this language operated to effect Sandia’s ownership when the PTO issued the certificate of correction in December 2008, formally making the '998 patent a continuation-in-part of the '321 patent. J.A. 11.
The district court rejected both of STC’s theories and granted partial summary judgment for Intel. The district court reasoned that ownership rights must derive from inventorship and, because Draper did not co-invent any claims of the '998 patent, he had no interest in the '998 patent to assign. Thus, the court held that Sandia did not co-own the '998 patent with UNM or STC at any point prior to the December 2011 Assignment. J.A. 16. The court did not grant summary judgment on the remaining issue of whether it was truly the same Sandia entity that co-owned each of the '321 and '998 patents.
The parties then cross-moved on the issue of standing, given Sandia’s co-ownership of the '998 patent (since at least December 2011) and absence from the case. Sandia refused to join the case, “prefer[ring] to take a neutral position with respect to this matter.” J.A. 884-85. The district court granted Intel’s motion to dismiss for lack of standing.
Relying on Ethicon, Inc. v. United States Surgical Corp., 135 F.3d 1456 (Fed.Cir.1998), the district court explained that *944 when a patent is co-owned, a co-owner seeking to enforce the patent must join all other coowners as plaintiffs to establish standing. Without this joinder, the plaintiff cannot pursue an infringement suit. J.A. 31. The district court acknowledged that Federal Rule of Civil Procedure 19(a) generally gives a court the ability to join a required party involuntarily. However, the district court explained that Ethicon states that a coowner ordinarily has the substantive right to impede another co-owner’s infringement action by refusing to voluntarily join the suit. The court noted that only two limited circumstances have been as yet recognized that would allow for involuntary joinder, but neither was present here. J.A. 31-39.
Finally, the district court rejected STC’s assertion that it should be able to proceed equitably without joining a necessary party under Rule 19(b). The district court weighed each Rule 19(b) factor and found that “equity and good conscience require that this action not go forward without Sandia.” J.A. 39-43. STC does not appeal this ruling, but does appeal whether Sandia can be involuntarily joined under Rule 19(a) as well as the district court’s partial grant of summary judgment on the timing of Sandia’s co-ownership.
III.
This court reviews a district court’s dismissal for lack of standing de novo. Isr. Bio-Eng’g Project v. Amgen, Inc., 475 F.3d 1256, 1262-63 (Fed.Cir.2007). This court has long applied the rule that a patent co-owner seeking to maintain an infringement suit must join all other coowners. See, e.g., id. at 1264-65. And, in Ethicon, this court held that, “as a matter of substantive patent law, all co-owners must ordinarily consent to join as plaintiffs in an infringement suit.” 135 F.3d at 1468; see also Schering Corp. v. Roussel-UCLAF SA, 104 F.3d 341, 345 (Fed.Cir.1997) (“Ordinarily, one co-owner has the right to impede the co-owner’s ability to sue infringers by refusing to voluntarily join in such a suit.” (citing Willingham v. Lawton, 555 F.2d 1340, 1344 (6th Cir.1977))).
STC’s argument in support of standing is purely legal. STC asserts that this court’s holding in Ethicon does not address a Rule 19(a) involuntary joinder at all. STC claims that Ethicon has been repeatedly and erroneously interpreted by this court in various instances of dicta to create a rule contrary to Rule 19(a) that does not actually exist. STC asserts that “there is no rule of substantive patent law that precludes the application of Rule 19.” Appellant’s Br. 15. STC thus argues that the holding in Ethicon yields to Rule 19(a)’s involuntary joinder test.
Rule 19(a) states the following:
(1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
(A) in that person’s absence, the court cannot accord complete relief among existing parties; or
(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person’s absence may:
(1) as a practical matter impair or impede the person’s ability to protect the interest; or
(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.
(2) Joinder by Court Order. If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to *945 join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.
As support for its position, STC notes that “[njowhere in the majority opinion in Ethicon is Rule 19 mentioned.” Appellant’s Br. 12. STC acknowledges though that the dissent in Ethicon did explicitly argue that “[tjhere is no barrier to the involuntary joinder of a joint inventor and/or co-owner under Rule 19, if such is needed to bring before the court all persons deemed necessary to the suit.” 135 F.3d at 1472 (Newman, J., dissenting). STC correctly notes that the majority opinion in Ethicon does not explicitly refer to Rule 19; however, STC is incorrect in arguing that Rule 19 trumps the holding that substantive patent law ordinarily requires consent to joinder from all coown-ers.
Importantly, the holding in Ethicon that substantive patent law requires co-owners (ordinarily) to consent to suit was not dictum. Rather, it was essential to the disposition of the case. In Ethicon, this court considered, inter alia, whether a plaintiff who was a co-owner of the asserted patent could maintain an infringement suit despite an absent co-owner. The other co-owner had granted a retroactive license to the accused infringer and refused to join the suit as a co-plaintiff. This court considered the effect of the license in light of principles expressed in a prior case, Schering Corp. v. Roussel-UCLAF SA, 104 F.3d 341 (Fed.Cir.1997).
In Ethicon, this court acknowledged two principles about the retroactive license granted to the accused infringer. First, “a license to a third party only operates prospectively.” Ethicon, 135 F.3d at 1467. Thus, the plaintiff, Ethicon, could not sue the defendant, U.S. Surgical, for any damages incurred after the date of the license or for any other prospective relief that may have otherwise been warranted. Id.; see Schering, 104 F.3d at 345 (“[B]y granting a license ... to a defendant that has already been sued for infringement, a patent co-owner can effectively deprive its fellow co-owner of the right to sue for and collect any infringement damages that accrue after the date of the license____[or] obtain an injunction against future acts of infringement by the licensee.... ”).
Second, “[a]bsent agreement to the contrary, a coowner cannot grant a release of another co-owner’s right to accrued damages.” Ethicon, 135 F.3d at 1467. Thus, although the non-plaintiff co-owner’s retroactive license had released U.S. Surgical from any past damages potentially owed to him, he could not “release U.S. Surgical from its liability for past accrued damages to Ethicon.” Id.; see Schering, 104 F.3d at 345 (“[T]he grant of a license by one co-owner cannot deprive the other co-owner of the right to sue for accrued damages for past infringement. That would require a release, not a license, and the rights of a patent co-owner, absent agreement to the contrary, do not extend to granting a release that would defeat an action by other co-owners to recover damages for past infringement.”).
These two effects of the retroactive license thus did not entirely dispose of the case. The retroactive license did not eliminate the claim Ethicon had for U.S. Surgical’s alleged past infringement. Instead, this court had to go on to apply the “settled principle” that “[a]n action for infringement must join as plaintiffs all co-owners.” Ethicon, 135 F.3d at 1467 (citing Waterman v. Mackenzie, 138 U.S. 252, 255, 11 S.Ct. 334, 34 L.Ed. 923 (1891)). And, because the non-plaintiff coowner refused to join the suit as a co-plaintiff, this court held that, “as a matter of substantive patent law, all coowners must ordinarily consent to join as plaintiffs in an infringe *946 ment suit.” Id. at 1468. Indeed, generally “one co-owner has the right to impede the other co-owner’s ability to sue infring-ers by refusing to voluntarily join in such a suit.” Schering, 104 F.3d at 345. This holding meant that Ethicon was unable to maintain its suit.
Whether this court in Ethicon expressly mentioned Rule 19(a)—the involuntary joinder provision—does not change the effect the holding had on it. Cf. DDB Techs., L.L.C. v. MLB Advanced Media, L.P., 517 F.3d 1284, 1289 n. 2 (Fed.Cir.2008) (“[W]e have explicitly held that Rule 19 does not permit the involuntary joinder of a patent coowner in an infringement suit brought by another coowner.”). Rules of procedure, such as that in Rule 19(a), must give way to substantive patent rights. 28 U.S.C. § 2072 (2012); see, e.g., Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (“[R]ules of procedure ‘shall not abridge, enlarge or modify any substantive right.’ ” (quoting § 2072)). To remove any doubt, this court holds that the right of a patent co-owner to impede an infringement suit brought by another co-owner is a substantive right that trumps the procedural rule for involuntary joinder under Rule 19(a).
There are, of course, scenarios that will overcome this rule against involuntary joinder of a patent owner or coowner in particular instances. As this court acknowledged in Ethicon and DDB Techs., two such scenarios have as yet been recognized. “First, when any patent owner has granted an exclusive license, he stands in a relationship of trust to his licensee” and can be involuntarily joined as a plaintiff in the licensee’s infringement suit; second, “[i]f, by agreement, a co-owner waives his right to refuse to join suit, his co-owners may subsequently force him to join in a suit against infringers.” Ethicon, 135 F.3d at 1468 n. 9 (citing see Indep. Wireless Tel. Co. v. Radio Corp. of Am,., 269 U.S. 459, 469, 46 S.Ct. 166, 70 L.Ed. 357 (1926); Willingham, 555 F.2d at 1344-45); see DDB Techs., 517 F.3d at 1289 n. 2; see also Prima Tek II, L.L.C. v. A-Roo Co., 222 F.3d 1372, 1377 (Fed.Cir.2000) (“As a general rule, this court continues to adhere to the principle set forth in Independent Wireless that a patentee should be joined, either voluntarily or involuntarily, in any infringement suit brought by an exclusive licensee.”); Schering, 104 F.3d at 345 (“Absent such an agreement [allowing co-owners to sue unilaterally], Schering, as a co-owner, would not be able to sue for infringement if its co-owner Roussel declined to join the suit.”). Hence, as stated in Ethicon, ordinarily an absent co-owner must consent to join the suit. None of the authorities cited in the dissent are to the contrary.
In the present case, neither of the above scenarios applies. And STC has not argued that some third scenario should be recognized that would bring about a different result based on the facts of this case. Moreover, each of the recognized exceptions relies predominantly on an absent co-owner who has in some way affirmatively given up its substantive right to refuse to join the suit. In this case, Sandia has—at the other end of the spectrum—affirmatively retained this right by consistently expressing its desire to not join the case.
Accordingly, because Sandia has not voluntarily joined this suit, and because no exception to this general substantive rule applies, STC lacks standing to maintain its suit against Intel.
This court is, of course, conscious of the equities at play in this case. Unless STC can secure Sandia’s voluntary joinder, obtain the '998 patent (and '321 patent) outright, or become the exclusive licensee of Sandia’s interest, STC cannot enforce the '998 patent in court. STC is certainly still *947 free to enjoy all the rights a co-owner enjoys, such as commercializing or exploiting the '998 patent through licensing without consent of the other coowners. See 35 U.S.C. § 262 (2012). Admittedly, a license demand may have less bite if STC cannot sue potential licensees if they refuse (and if Sandia would not voluntarily join the suit). However, this limit on a co-owner’s right to enforce a patent is one effect of the reality that each coowner is “at the mercy” of its other co-owners. Ethicon, 135 F.3d at 1468 (quoting Willingham, 555 F.2d at 1344). Importantly, this limit protects, inter alia, a co-owner’s right to not be thrust into costly litigation where its patent is subject to potential invalidation. Furthermore, the rule requiring in general the participation of all coowners safeguards against the possibility that each coowner would subject an accused infringer to a different infringement suit on the same patent. Both concerns underpin this court’s joinder requirement for patent owners.
Finally, because STC cannot maintain the present suit without Sandia due to its lack of standing, this court need not address the appealed ownership issues concerning the '998 patent.
IV.
Because co-owner Sandia did not consent to join this infringement suit against Intel and cannot otherwise be involuntarily joined on these facts, STC cannot maintain its suit. Accordingly, this court affirms the district court’s dismissal of the case.
AFFIRMED