# United States Court of Appeals
## for the Federal Circuit

---

**ADVANCED VIDEO TECHNOLOGIES LLC,**
*Plaintiff-Appellant*

**v.**

**HTC CORPORATION, HTC AMERICA, INC.,
BLACKBERRY LTD, BLACKBERRY
CORPORATION, MOTOROLA MOBILITY LLC,**
*Defendants-Appellees*

---

2016-2309, 2016-2310, 2016-2311

---

Appeals from the United States District Court for the Southern District of New York in Nos. 1:15-cv-04626-CM, 1:15-cv-04631-CM, 1:15-cv-04632-CM, Judge Colleen McMahon.

---

Decided: January 11, 2018

---

ROBERT WILLIAM MORRIS, Eckert Seamans Cherin & Mellott, LLC, White Plains, NY, argued for plaintiff-appellant. Also represented by OJEIKU CHRISTOPHER AISIKU, THOMAS MARTIN SMITH.

HEIDI LYN KEEFE, Cooley LLP, Palo Alto, CA, argued for all defendants-appellees. Defendants-appellees HTC Corporation, HTC America, Inc. also represented by KYLE DAKAI CHEN, MARK R. WEINSTEIN.

JEFFRI A. KAMINSKI, Venable LLP, Washington, DC, for defendants-appellees Blackberry LTD, Blackberry Corporation. Also represented by WILLIAM DEAN COSTON; CHRISTOPHER T. LA TESTA, Baltimore, MD.

FREDERICK LEE WHITMER, Kilpatrick Townsend & Stockton LLP, New York, NY, for defendant-appellee Motorola Mobility LLC. Also represented by AKARSH BELAGODU, Washington, DC; DAVID CLAY HOLLOWAY, Atlanta, GA; STEVEN MOORE, San Francisco, CA.

_____

Before NEWMAN, O'MALLEY, and REYNA, *Circuit Judges.*

Opinion of the court filed by *Circuit Judge* REYNA.

Concurring opinion filed by *Circuit Judge* O'MALLEY.

Dissenting opinion filed by *Circuit Judge* NEWMAN.

REYNA, *Circuit Judge.*

Advanced Video Technologies LLC appeals an order from the United States District Court for the Southern District of New York that dismissed its complaints for lack of standing.  The district court based its decision on the ground that a co-owner of the patent was not a party to the actions, and the co-owner's ownership interests in the patent were not transferred to Advanced Video.  We *affirm*.

## BACKGROUND

This appeal involves U.S. Patent No. 5,781,788 ("'788 patent"), entitled "Full Duplex Single Clip Video Codec." The technology of the patent is not at issue.  The single issue involved in this appeal is whether a co-inventor of the patent transferred her co-ownership interests in the patent under the terms of an employment agreement.

The '788 patent lists three co-inventors: Beng-Yu "Benny" Woo, Xiaoming Li, and Vivian Hsiun. The invention was created while the co-inventors were employed with Infochips Systems Inc. ("Infochips"). Two of the inventors, Mr. Woo and Ms. Li assigned their co-ownership interests in the patent to Advanced Video. The only co-ownership interests involved in this appeal are those of Ms. Hsiun.

Advanced Video maintains that it obtained Ms. Hsiun's co-ownership interests in the invention through a series of transfers. According to Advanced Video, the first transfer was made before the '788 patent application was filed, pursuant to a January 1992 Employment Agreement ("Employment Agreement") between Ms. Hsiun and Infochips. The second transfer occurred when Infochips' "receivables," which had been pledged as security in a financing agreement between Infochips and an entity called Lease Management Services, were seized by Lease Management when Infochips went out of business in 1993. The third transfer occurred in 1995 when Lease Management sold the Infochips assets to Mr. Woo, one of the three co-inventors. A fourth transfer occurred when Mr. Woo assigned his ownership interest in the '788 patent to an entity called AVC Technology Inc. ("AVC"). [1]

In 1995, AVC filed the parent application of the '788 patent.[2] Two of the three inventors, Mr. Woo and Ms. Li, executed assignments of their ownership interest in the invention to AVC at that time. Ms. Hsiun, however, refused to assign her interests. AVC filed a petition before the U.S. Patent and Trademark Office ("PTO")

---

[1] We only address the validity of the purported transfer under the Employment Agreement.

[2] A continuation of that patent application, filed in 1997, ultimately issued as the '788 patent in 1998.

requesting that it be permitted to prosecute the application without an assignment from Ms. Hsiun. In support, AVC filed a declaration attaching the Infochips Employment Agreement and financial documents between Infochips and Lease Management purporting to show that Mr. Woo and AVC had acquired Ms. Hsiun's ownership rights. The PTO granted AVC's petition and the '788 patent was issued to AVC. AVC was later dissolved, but not before purporting to transfer its assets to its successors, and ultimately, Advanced Video.

In 2011, Advanced Video filed three patent infringement lawsuits against Appellees in the United States District Court for the Southern District of New York. The district court found, however, that AVC had failed to comply with Delaware statutory law governing the distribution of assets for dissolved corporations, and that no patent rights had transferred from AVC to Advanced Video. Because Advanced Video had no ownership interest in the patent, the cases were dismissed for lack of standing. *Advanced Video Techs., LLC v. HTC Corp.*, 103 F. Supp. 3d 409 (S.D.N.Y. 2015).[3]

In 2015, the Delaware Court of Chancery appointed a Receiver to transfer to Advanced Video any patent rights held by AVC. *Advanced Video Techs. LLC v. HTC Corp.*, No. 15 Civ. 4626 (CM), 2016 WL 3434819, at *5-6 (S.D.N.Y. June 14, 2016). After the transfer was achieved, Advanced Video filed three new patent infringement lawsuits against Appellees. In response to a motion to dismiss, Advanced Video argued before the

---

[3] The district court also awarded attorneys' fees, finding the case "exceptional" under 35 U.S.C. § 285. The fee award was affirmed by this court. *Advanced Video Techs., LLC v. HTC Corp.*, 677 F. App'x 684 (Fed. Cir. 2017).

district court that it had acquired Ms. Hsiun's ownership rights via the aforementioned series of transfers beginning with a transfer from Ms. Hsiun to Infochips under the terms of the Employment Agreement. According to Advanced Video, the transfer was effected pursuant to three provisions of the Employment Agreement: a "will assign" provision, a trust provision, and a quitclaim provision. The "will assign" and trust provisions provide as follows:

> I agree that I will promptly make full written disclosure to the Company, **will hold in trust** for the sole right and benefit of the Company, and **will assign** to the Company all my right, title, and interest in and to any and all inventions, original works of authorship, developments, improvements or trade secrets which I may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time I am in the employ of the Company.

J.A. 258 (emphasis added).

> The quitclaim provision provides as follows:

> I hereby waive and **quitclaim** to the Company any and all claims, of any nature whatsoever, which I now or may hereafter have infringement [sic] of any patents, copyrights, or mask work rights resulting from any such application assigned hereunder to the Company.

J.A. 260. (emphasis added).

The district court concluded that these provisions did not effect a transfer of Ms. Hsiun's ownership rights to Advanced Video. As such, because Ms. Hsiun was not a party to the suit, the district court dismissed the case for lack of standing. Advanced Video appeals.

DISCUSSION

## 1. Standard of Review

This court reviews de novo a district court's dismissal for lack of standing. *Isr. Bio-Eng'g Project v. Amgen Inc.*, 475 F.3d 1256, 1262–63 (Fed. Cir. 2007); *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1376 (Fed. Cir. 2000). Factual findings relevant to a lack of standing determination are reviewed for clear error. *Enovsys LLC v. Nextel Commc'ns, Inc.*, 614 F.3d 1333, 1340–41 (Fed. Cir. 2010).

## 2. "Will Assign"

Advanced Video argues that Ms. Hsiun's ownership rights transferred immediately upon execution of the Employment Agreement. In support, Advanced Video points to "will assign" language contained in the agreement.

Section 2.b of the Infochips Employment Agreement provides that Ms. Hsiun "will assign to the Company" all her right, title, and interest in any inventions. The district court found that "will" invoked a promise to do something in the future and did not effect a present assignment. *Advanced Video Techs.*, 2016 WL 3434819, at *8–9. The court relied on *Arachnid, Inc. v. Merit Industries, Inc.,* 939 F.2d 1574, 1576 (Fed. Cir. 1991), which held that "will be assigned" language in a consulting agreement did not itself effect an assignment but was merely a promise to assign. *Id.* at 1576, 1580–81. The district court also reasoned that the trust provision of the Employee Agreement undermined an immediate assignment because Ms. Hsiun could not immediately assign the rights and at the same time hold them in trust. *Advanced Video Techs.*, 2016 WL 3434819 at *9. We agree with the district court that no present assignment exists in the Employment Agreement. The "will assign" language alone does not create an immediate assignment of Ms. Hsiun's rights in the invention to Infochips.

### 3. Trust Assignment

Advanced Video argues that "will hold in trust" created an immediate trust under California law in favor of Infochips. Even were we to determine that Ms. Hsiun's interests in the invention were immediately placed in trust, it does not follow that those interests were automatically, or ever, actually transferred out of trust in favor of Infochips. Absent a transfer, Ms. Hsiun would continue to hold the invention rights as a trustee. While Advanced Video could potentially seek to enforce its alleged ownership rights, or allege a breach of Ms. Hsiun's duties as a trustee by her failure to transfer those rights, by bringing an action against Ms. Hsiun, no party brought such an action. *See, e.g., Jim Arnold Corp. v. Hydrotech Sys*., 109 F.3d 1567, 1578 (Fed. Cir. 1997) (stating that a party needs to file a state-law based claim to obtain title to the patent before bringing a patent infringement claim). Since Advanced Video has not sought to enforce any obligation Ms. Hsiun might have under the trust, it ultimately has no standing to bring a patent infringement action. *See Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1366 (Fed. Cir. 2010).

Under California trust law a trust beneficiary "generally is not the real party in interest," "may not sue in the name of the trust," and "has no legal title or ownership interest in the trust assets." *Saks v. Damon Raike & Co.*, 8 Cal. Rptr. 2d 869, 874–75 (Cal. Ct. App. 1992) (citing *Botsford v. Haskins & Sells*, 146 Cal. Rptr. 752, 754 (Cal. App. 1978)). The dissent cites *Kadota Fig Association of Producers v. Case-Swayne Co.*, 167 P.2d 518 (1946), for the proposition that the real party in interest in California trust disputes is actually the beneficiary, not the trustee. Dissent at 6. *Kadota* does not apply, however, because it involves a "business trust," which, under California law, is considered "a type of business organization" and not the type of trust in this case. *Goldwater v. Oltman*, 292 P. 624, 627 (Cal. 1930). Even if Advanced Video

is correct that Ms. Hsiun's rights are held in trust, Advanced Video, as a trust beneficiary, cannot maintain a patent infringement suit where Ms. Hsiun is not a party, nor can she as a co-owner of the patent be involuntarily joined as a plaintiff, except under limited circumstances which do not apply here.[4]

### 4. Quitclaim Assignment

Advanced Video maintains that it has standing because it eventually acquired Ms. Hsiun's ownership interest in the invention when she quitclaimed her interest to Infochips under the terms of the Employment Agreement.

Section 2.e of the Employment Agreement provides:

I hereby waive and quitclaim to the Company any and all claims, of any nature whatsoever, which I now or may hereafter have infringement [sic] of any patents, copyrights, or mask work rights re-

---

[4]    *See* Fed. R. Civ. P. 19; *STC.UNM v. Intel Corp.*, 754 F.3d 940, 945–46 (Fed. Cir. 2014) (explaining that the right of a co-owner "to impede an infringement suit brought by another co-owner is a substantive right that trumps the procedural rule for involuntary joinder"). Under California trust law, a trust beneficiary may seek judicial compulsion against a trustee who refuses to enforce a valid cause of action, and "[i]n order to prevent loss of or prejudice to a claim, the beneficiary may bring an action in equity joining the third person and the trustee." *Saks*, 8 Cal. Rptr. 2d at 875 (citing *Triplett v. Williams*, 74 Cal. Rptr. 594, 596 (Cal. Ct. App. 1969)). Here, Advanced Video has not attempted to join Ms. Hsiun as a trustee or otherwise bring an action against Ms. Hsiun. Accordingly, we do not address the question of whether Ms. Hsiun could be involuntarily joined as trustee under California trust law and Fed. R. Civ. P. 19(a)(1)(B)(i).

> sulting from any such application assigned here-
> under to the Company.

J.A. 260.

Advanced Video argues that "assigned hereunder" should essentially be read to mean all claims "assignable hereunder," and that rights that Ms. Hsiun promised she "will assign" were immediately quitclaimed under the Employment Agreement. The Employment Agreement, however, does not provide "assignable hereunder" language. Advanced Video cites no authority showing that "assigned hereunder" covers patent rights that could have been assigned under a contract, but were never actually assigned.

The quitclaim provision waives Ms. Hsiun's rights to interests in any patent rights that she assigned under the agreement. But, as no patent rights were ever assigned to Infochips, the quitclaim provision has no application. Accordingly, we find that the quitclaim provision in the Employment Agreement did not effect an assignment of the '788 patent from Ms. Hsiun to Infochips, AVC, or Advanced Video.

The dissent argues that it may be discerned from the Employment Agreement that the parties intended any ownership interest in inventions developed during Ms. Hsiun's employment with Infochips were the property of Infochips. Dissent at 7–10. But, the terms of the Employment Agreement provide otherwise. Generally, courts should not deviate from unambiguous provisions unless they lead to "absurd results." *Shaw v. Regents of Univ. of Cal.*, 67 Cal. Rptr. 2d 850, 855 (Cal. Ct. App. 1997); *see also Coast Plaza Doctors Hosp. v. Blue Cross of Cal.*, 99 Cal. Rptr. 2d 809, 815 (Cal. Ct. App. 2000). In this instance, the Employment Agreement is unambiguous and, as stated, there is no reason to believe that the parties intended a present assignment. This court has previously found such agreements to assign insufficient to confer

standing. *See IpVenture, Inc. v. Prostar Comput., Inc.*, 503 F.3d 1324, 1327 (Fed. Cir. 2007).

CONCLUSION

Advanced Video does not have full ownership of the '788 patent. Ms. Hsiun is neither a party to the suits, nor has she consented to these suits. Advanced Video, therefore, has no standing to maintain its suit. Accordingly, we affirm the district court's dismissal of the cases.

**AFFIRMED**

COSTS

No costs.

# United States Court of Appeals
# for the Federal Circuit

---

**ADVANCED VIDEO TECHNOLOGIES LLC,**
*Plaintiff-Appellant*

**v.**

**HTC CORPORATION, HTC AMERICA, INC.,
BLACKBERRY LTD, BLACKBERRY
CORPORATION, MOTOROLA MOBILITY LLC,**
*Defendants-Appellees*

---

2016-2309, 2016-2310, 2016-2311

---

Appeals from the United States District Court for the Southern District of New York in Nos. 1:15-cv-04626-CM, 1:15-cv-04631-CM, 1:15-cv-04632-CM, Judge Colleen McMahon.

---

O'MALLEY, *Circuit Judge*, concurring.

I agree that we are bound to apply the law of this Circuit that compels the result we reach today. I, thus, must concur in that result. I write separately, however, to explain why I continue to believe that the binding precedent which serves as the predicate for today's majority opinion is wrong. In particular, I address why the conclusion that a non-consenting co-owner or co-inventor can never be involuntarily joined in an infringement action pursuant to Rule 19 of the Federal Rules of Civil Procedure is incorrect. In the absence of that errant conclu-

sion, the various questions we address in this case would be irrelevant.

As I explained in my opinion dissenting from the denial of the petition for rehearing en banc in *STC.UNM v. Intel Corp.*, 767 F.3d 1351 (Fed. Cir. 2014), several things are clear about Rule 19.  First, Rule 19(a)(1)(A) provides that "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction *must* be joined as a party if[] in that person's absence, the court cannot accord complete relief among existing parties."  Fed. R. Civ. P. 19(a)(1)(A) (emphasis added).  Second, Rule 19, like all other Federal Rules of Civil Procedure, is "as binding as any federal statute." *Stone Container Corp. v. United States*, 229 F.3d 1345, 1354 (Fed. Cir. 2000) ("[T]he Federal Rules of Civil Procedure, like the Federal Rules of Criminal procedure, are 'as binding as any federal statute.'" (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988)).  Third, again, like all other Rules of Civil Procedure, Rule 19 applies in patent cases just as fully as it applies in all other federal civil actions.  *See, e.g.*, *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393–94 (2006) (rejecting this court's attempt to develop a rule regarding the right to injunctive relief "unique to patent disputes," holding that "the traditional four-factor framework . . . governs the award of injunctive relief").  And, finally, it is Rule 19—not substantive judge-made laws governing joinder— that establishes the criteria for assessing joinder.  *See Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 118 n.13 (1968) (citing with approval to a commentator who noted that "there is no case support for the proposition that the judge-made doctrines of compulsory joinder have created substantive rights beyond the reach of the rulemaking power" (quoting 2 Barron & Holtzoff, Federal Practice & Procedure § 512, n.21.14 (1967 Supp.) (Wright ed.))).

And, as Judge Newman wrote in her opinion dissenting from the denial of rehearing en banc in *STC.UNM*, "Rule 19 is not permissive" despite this court's precedent that "Rule 19 uniquely does not apply in patent cases." 767 F.3d at 1355 (Newman, J., dissenting). This precedent represents a "further removal" of patent cases from "the mainstream of the law." *Id.* Indeed, the "unique exclusion of patent cases from Federal Rule 19 is as peculiar as it is unjustified," for "[n]o justification can be found for withdrawing or excluding the co-owner of a patent from access to legal process." *Id.* at 1356–57.

Despite our precedent, Rule 19(a) provides for the involuntary joinder of a necessary party. The rule states, in relevant part, that:

(a) Persons Required to be Joined if Feasible.

(1) *Required Party*. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial

> risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.
>
> (2) *Joinder by Court Order.* If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

Fed. R. Civ. P. 19(a)(1)–(2). By its terms, therefore, when a person satisfies the requirements of Rule 19(a), joinder of that person is required.

If joinder of a required party is not feasible, Rule 19(b) provides that "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). That analysis involves consideration of several factors specified in Rule 19(b), including: (1) "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties"; (2) "the extent to which any prejudice could be lessened or avoided"; (3) "whether a judgment rendered in the person's absence would be adequate"; and (4) "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. 19(b)(1)–(4).

Recognizing the mandatory nature of Rule 19, one panel of this court has noted, albeit in dictum, that "all entities with an independent right to enforce the patent are indispensable or necessary parties to an infringement suit. When such an entity declines to join in the suit it may be joined involuntarily, either as a party plaintiff or party defendant[] . . . ." *IpVenture, Inc. v. ProStar Comput., Inc.*, 503 F.3d 1324, 1325–26 (Fed. Cir. 2007) ("[W]e

need not reach the question of whether the district court had discretion, in applying Fed. R. Civ. P. 19(a), to permit the addition of parties in this case without requiring dismissal and refiling by the plaintiff.").

For its part, the Supreme Court has indicated in a non-patent case that Rule 19—not substantive law— applies when determining who must participate in a lawsuit. *See Provident Tradesmens*, 390 U.S. 102. There, the Third Circuit declined to follow Rule 19, and, instead, held that

> the right of a person who 'may be affected' by the judgment to be joined is a 'substantive' right, un- affected by the federal rules; that a trial court 'may not proceed' in the absence of such a person; and that since [one party] could not be joined as a defendant without destroying diversity jurisdic- tion the action had to be dismissed.

*Id.* at 107.[1]  The Supreme Court reversed, holding that "Rule 19(b), which the Court of Appeals dismissed as an ineffective attempt to change the substantive rights . . . is, on the contrary, a valid statement of the criteria for

---

[1]  At the outset, the Court noted that the absent party fell within the category of persons who should be "joined if feasible" under Rule 19(a), but "could not be made a defendant without destroying diversity." *Provident Tradesmens*, 390 U.S. at 108.  Because Rule 19(a) provides that joinder cannot deprive the court of subject- matter jurisdiction, the Court focused its analysis on Rule 19(b), which asks whether the court should dismiss the action or proceed without the absent party. *Id.* at 108–09. The Court's discussion of the interplay between alleged substantive rights and Rule 19 remains relevant to con- sideration of this issue, even though it occurred when discussing Rule 19(b) rather than Rule 19(a).

determining whether to proceed or dismiss in the forced absence of an interested person." *Id*. at 125.

There is no dispute over whether co-owners are necessary parties to infringement actions; the question we must address is whether a co-owner's mere recalcitrance can prevent enforcement of another co-owner's rights. Rule 19(a) is designed to address circumstances just like those at issue here. *See* 7 Charles Alan Wright et al., *Federal Practice and Procedure* § 1606 (3d ed. 2013) ("The joinder of an absent person who should be a plaintiff as an involuntary plaintiff is authorized by the second half of the third sentence of Rule 19(a). . . . The purpose of this procedure is to mitigate some of the harshness that occasionally results when the joinder of a nonparty is found to be desirable but the nonparty refuses to join in the action."). Involuntary joinder assumes recalcitrance by the joined party (or, as here, a preference not to participate), but authorizes joinder nonetheless. Rule 19(a) makes no exception for recalcitrant patent owners and we, to date, have not explained from where such an exception derives. *See id*. (noting that the "most typical application" of Rule 19(a) "has been to allow exclusive licensees of patents and copyrights to make the owner of the monopoly an involuntary plaintiff in infringement suits").

The original cases on which our Rule 19 joinder precedent relies do not proscribe the use of involuntary joinder of co-owners or co-inventors in patent cases, as our precedent does. Neither *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456 (Fed. Cir. 1998), nor any other case on which it relies specifically holds that a patent co-owner or co-inventor cannot be involuntarily joined under Rule 19(a). Examination of the pertinent case law reveals that repeated references to unsupported dicta have morphed into a hard-and-fast rule from which this court refuses to deviate.

In *Ethicon*, we quoted an earlier Federal Circuit decision for the proposition that "one co-owner has the right to impede the other co-owner's ability to sue infringers by refusing to voluntarily join in such a suit."  135 F.3d at 1468 (quoting *Schering Corp. v. Roussel-UCLAF SA*, 104 F.3d 341, 345 (Fed. Cir. 1997)).  *Schering*, in turn, relied solely on a Sixth Circuit decision—*Willingham v. Lawton*, 555 F.2d 1340 (6th Cir. 1977)—not on the Patent Act or even preexisting federal common law.  But *Willingham* did not purport to create any substantive patent rights.  In fact, the *Willingham* court expressly declined to address the patent co-owner's argument that it had a substantive right not to be forced to join the action under Rule 19(a).  As explained below, Rule 19 was not at issue in either *Schering* or *Ethicon*, and the court in *Willingham* actually endorsed the application of Rule 19(a) on the facts before it.  Accordingly, none of these cases supports our current rule that displaces application of Rule 19.

First, the "crux of the problem" in *Willingham* was "whether a co-owner could authorize by contract another co-owner to file suit for patent infringement without the permission of the first co-owner, in an action in which the unwilling co-owner is joined as an involuntary plaintiff under Rule 19."  555 F.2d at 1343–44.  Although the patent co-owner, Star, argued that "Rule 19(a) is procedural and does not alter the substantive law requiring voluntary joinder of all co-owners of a patent in a suit for its infringement," the court found that it "need not reach this issue," because Star waived any objection by signing a contract that gave either co-owner the right to initiate an infringement action in its sole discretion.  *Id.* at 1343 & n.5.  The court further explained that: (1) "[m]aking a patent owner an involuntary plaintiff is not new"; (2) "[j]oining Star as an involuntary plaintiff protects the interests of both the defendants"; and (3) "Rule 19(a)

requires the continued joinder of Star as an involuntary plaintiff in the infringement suit." *Id.* at 1346.

The Sixth Circuit in *Willingham* recognized the "general rule that all co-owners of a patent must be joined as plaintiffs before an infringement suit can be initiated." *Id.* at 1343 (citing *Waterman v. Mackenzie*, 138 U.S. 252, 255 (1891)).[2]  It did not create or purport to create any new substantive patent law right that would trump application of Rule 19, however.  Indeed, it expressly stated it was not addressing that question because it found any rights Star *might have had* on that score to have been waived.  *Id.* at 1343 n.5 (comparing *Provident Tradesmens*, 390 U.S. at 118 n.13, 125 (recognizing that Rule 19(b) is "a valid statement of the criteria for determining whether to proceed or dismiss in the forced absence of an interested person" and that "judge made doctrines of compulsory joinder" do not create substantive rights falling outside the reach of the rule), with *Gibbs v. Emerson Elec. Mfg. Co.*, 29 F. Supp. 810, 812 (W.D. Mo. 1939) (concluding that "it appears that one joint owner or

---

[2]    In *Waterman*, the Supreme Court explained that a patentee or his assignee may grant and convey to another: (1) the whole patent; (2) an undivided part or share of that exclusive right; or (3) "the exclusive right under the patent within and throughout a specified part of the United States."  138 U.S. at 255.  "A transfer of either of these three kinds of interests is an assignment, properly speaking, and vests in the assignee a title in so much of the patent itself, with a right to sue infringers; in the second case, jointly with the assignor; in the first and third cases, in the name of the assignee alone."  *Id.* Importantly, the "development of the practice of joining a party as an involuntary plaintiff was a response" to *Waterman.*  7 Charles Alan Wright et al., *Federal Practice and Procedure* § 1606 (3d ed. 2013).

coowner or tenant in common of a patent right cannot compel the other coowner to join in a suit for an infringement")).

*Schering* involved a dispute between two co-owners of a pharmaceutical patent: Schering and Roussel.  Schering sued Zeneca for infringement, and two weeks later, Roussel granted a license to Zeneca.  Schering argued that the terms of its co-ownership agreement with Roussel—which provided that, "if one of the co-owners files an infringement suit, it can call on the non-suing co-owner to provide 'reasonable assistance' in connection with the litigation"— meant that the non-suing party could not grant a license to a defendant or prospective defendant.  *Schering*, 104 F.3d at 345–46.  Undertaking a contract analysis, we held that nothing in the agreement limited the right to grant licenses under the patent, but that "the grant of a license by one co-owner cannot deprive the other co-owner of the right to sue for accrued damages for past infringement." *Id.* at 345.

Involuntary joinder was not at issue on appeal in *Schering* because, at the district court level, "Schering joined Roussel as an involuntary plaintiff pursuant to Rule 19(a)." *Schering Corp. v. Zeneca Inc.*, 958 F. Supp. 196, 197 (D. Del. 1996); *see Schering*, 104 F.3d at 346 (noting that the "co-ownership agreement made Roussel subject to being named as an involuntary plaintiff in an infringement action brought by Schering").  Accordingly, this court in *Schering* did not address or analyze Rule 19; it proceeded on the assumption that joinder under Rule 19(a) had occurred and that no objection to it had been raised on appeal.  While we did cite the Sixth Circuit's *Willingham* decision for the proposition that, "[o]rdinarily, one co-owner has the right to impede the other co-owner's ability to sue infringers by refusing to voluntarily join," the "impediment" to which we referred was not due to non-joinder or a "refus[al] to voluntarily join"—it was due to the co-owner's decision to license the patent to the

accused infringer prospectively. *Schering*, 104 F.3d at 345 (citing *Willingham*, 555 F.2d at 1344). We explained that, "by granting a license to a prospective infringement defendant, or to a defendant that has already been sued for infringement, a patent co-owner can effectively deprive its fellow co-owner of the right to sue for and collect any infringement damages that accrue *after* the date of the license." *Id.* (emphasis added). Again, we never said a co-owner could deprive a fellow co-owner of his or her rights merely by not joining in an infringement action.

In *Ethicon*, the co-owner of the patent—Dr. Choi—granted a "retroactive license" to the accused infringer—U.S. Surgical—and thus could not consent to an infringement suit against it. *Ethicon*, 135 F.3d at 1458–59. Because the parties stipulated to Choi's intervention as defendant-intervenor in the case, the majority neither cited nor discussed Rule 19. *Id.* at 1458. Instead, the court focused on the scope of the "retroactive license." Specifically, the court found that: (1) "a license to a third party only operates prospectively;" and (2) absent agreement otherwise, "a co-owner cannot grant a release of another co-owner's right to accrued damages." *Id.* at 1467 (concluding that "Choi cannot release U.S. Surgical from its liability for past accrued damages to Ethicon, only from liability to himself").

In the context of its retroactive licensure discussion, the court explained that, "as a matter of substantive patent law, all co-owners must ordinarily consent to join as plaintiffs in an infringement suit." *Id.* at 1468.[3] The

---

[3] The court recognized two exceptions: (1) "when any patent owner has granted an exclusive license, he stands in a relationship of trust to his licensee and must permit the licensee to sue in his name"; and (2) "[i]f, by agreement, a co-owner waives his right to refuse to join suit, his co-owners may subsequently force him to join in

court did not cite any authority for this so-called "substantive patent law," but subsequently cited *Schering* for the proposition that one co-owner can "impede" the other co-owner's ability to pursue an infringement action. *Id.* (quoting *Schering*, 104 F.3d at 345). As in *Schering*, however, Choi's ability to "impede" Ethicon's infringement action was not due to non-joinder, particularly since Choi was already a voluntary party to the case. Instead, it was because Choi had granted a license to U.S. Surgical. The court concluded that dismissal was warranted because "Choi did not consent to an infringement suit against U.S. Surgical and indeed can no longer consent due to his grant of an exclusive license," and thus "Ethicon's complaint lacks the participation of a co-owner of the patent." *Id.* Because the court's decision in *Ethicon* did not involve joinder or Rule 19, it cannot stand for the proposition that Rule 19 cannot be invoked to force joinder when no license impedes doing so.

The majority in *Ethicon* did not discuss joinder under Rule 19, did not purport to harmonize the requirements of Rule 19 with preexisting substantive patent law, and—because the decision was focused on licensing issues—did not create any new principles of law applicable to future cases involving the involuntary joinder of patent co-owners. Importantly, the *Ethicon* majority's silence cannot be evidence of its position with respect to Rule 19,

---

a suit against infringers." *Ethicon*, 135 F.3d at 1468 n.9 (citing *Indep. Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459, 469 (1926); *Willingham*, 555 F.2d at 1344–45). As the dissent in *STC.UNM* points out, it makes little sense to say "that when an infringement suit is brought by an exclusive licensee, the patent owner can be joined; but when an infringement suit is brought by a co-owner, the other co-owner cannot be involuntarily joined." *STC.UNM*, 754 F.3d at 951 (Newman, J., dissenting).

even though the dissenting opinion discussed the rule. *Id.* at 1472 (Newman, J., dissenting) ("There is no barrier to the involuntary joinder of a joint inventor and/or co-owner under Rule 19, if such is needed to bring before the court all persons deemed necessary to the suit."); *see United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 261 F.3d 245, 260 (2d Cir. 2001) ("[W]e require more than the Court's silence on this point before concluding that it either rejected or accepted the public/private distinction advocated by the concurring and dissenting opinions.").

Although our *Ethicon* decision was not based on Rule 19, we subsequently stated that it "explicitly held that Rule 19 does not permit the involuntary joinder of a patent co-owner in an infringement suit brought by another co-owner." *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1289 n.2 (Fed. Cir. 2008) (citing *Ethicon*, 135 F.3d at 1468). It is unclear, however, why the court in *DDB Technologies* would say that *Ethicon* made an *explicit* holding with respect to Rule 19 when it was not even mentioned in the majority opinion. In any event, the reference to *Ethicon* in *DDB Technologies* was dictum because the sole issue before the court in that case dealt with entitlement to jurisdictional discovery. *Id.* at 1286 ("[W]e hold that the district court erred in denying DDB's request for jurisdictional discovery.").[4]

---

[4]    Other decisions from this court have perpetuated the idea that all co-owners must ordinarily join as plaintiffs in an infringement suit, but, again, Rule 19(a) was neither raised nor addressed in those cases. *See Isr. Bio-Eng'g Project v. Amgen, Inc.*, 475 F.3d 1256, 1264 (Fed. Cir. 2007) (citing *Ethicon* and *Schering* to find that "one co-owner has the right to limit the other co-owner's ability to sue infringers by refusing to join voluntarily in the patent infringement suit"); *Int'l Nutrition Co. v. Horphag*

Tracing the origin of our so-called rule of substantive patent law makes clear that, prior to our decision in *STC.UNM v. Intel Corp.*, 754 F.3d 940 (Fed. Cir. 2014), we had never explicitly held that one patent co-owner cannot involuntarily join the other. Neither *Schering* nor *Ethicon* made any pronouncements on involuntary joinder that were necessary to the resolution of those cases. There is no preexisting federal common law supporting the court's declaration in *STC.UNM* of a substantive patent right that wholly trumps application of Rule 19.

Moreover, it is well established that, absent any agreement to the contrary, "each of the joint owners of a patent may make, use, offer to sell, or sell the patented invention within the United States, or import the patented invention into the United States, without the consent of and without accounting to the other owners." 35 U.S.C. § 262. Given these rights, the *Ethicon* court declared that "the congressional policy expressed by section 262 is that patent co-owners are 'at the mercy of each other.'" *Ethicon*, 135 F.3d at 1468 (quoting *Willingham*, 555 F.2d at 1344). Nothing in § 262 suggests that one co-owner can deprive the others of their rights to enforce the patent. Indeed, we have recognized that "[a] patentee's right to exclude is a fundamental tenet of patent law." *Edwards Lifescis. AG v. CoreValve, Inc.*, 699 F.3d 1305, 1314 (Fed. Cir. 2012) (citations omitted). And § 262 specifically provides that each co-owner has an independent right to

---

*Research Ltd.*, 257 F.3d 1324, 1331 (Fed. Cir. 2001) (citing *Ethicon* for the proposition that United States patent law "requires that all co-owners normally must join as plaintiffs in an infringement suit"). Mere repetition of dicta—without any accompanying analysis and without consideration of Rule 19—cannot give rise to a substantive patent right sufficient to overcome application of that rule.

practice the patent. It therefore seems inconsistent to say that each co-owner has an independent right to practice the patent, but that they may prevent one another from enforcing the fundamental right of exclusion solely because they "prefer[] to take a neutral position." *See STC.UNM*, 754 F.3d at 943.

Finally, the Patent Act provides that "[a] patentee *shall* have remedy by civil action for infringement of his patent." 35 U.S.C. § 281 (emphasis added). In other words, each co-owner has a right to file a civil action to enforce the patent. But the effect of our current precedent is that, if a patent co-owner refuses to join the infringement suit voluntarily as a plaintiff, it can prevent the other owner from obtaining judicial relief for accrued damages. If that were the case, then § 281's statutorily-mandated right to a civil action would have little meaning. Accordingly, while there may be some other support for our precedent's so-called overriding "substantive right" against involuntary joinder in patent infringement cases, our decisions have provided no statutory basis for this rule, which actually appears inconsistent with several provisions of the Patent Act.

Rather than once again exempting patent law from the rules that govern all federal litigation, we should either: (1) clarify the basis for our so-called substantive right against involuntary joinder in patent infringement cases and explain why it can overcome the dictates of Rule 19; or (2) hold that Rule 19, including the provisions for involuntary joinder set forth therein, applies to cases such as this one. For these reasons, I respectfully suggest that our Rule 19 precedent should be reconsidered en banc by this court. Because I must abide by that precedent in deciding this case, however, I concur in the judgment.

# United States Court of Appeals
# for the Federal Circuit

---

**ADVANCED VIDEO TECHNOLOGIES LLC,**
*Plaintiff-Appellant*

**v.**

**HTC CORPORATION, HTC AMERICA, INC.,
BLACKBERRY LTD, BLACKBERRY
CORPORATION, MOTOROLA MOBILITY LLC,**
*Defendants-Appellees*

---

2016-2309, 2016-2310, 2016-2311

---

Appeals from the United States District Court for the Southern District of New York in Nos. 1:15-cv-04626-CM, 1:15-cv-04631-CM, 1:15-cv-04632-CM, Judge Colleen McMahon.

---

NEWMAN, *Circuit Judge,* dissenting.

I respectfully dissent. Joint inventor Vivian Hsiun never had co-ownership of the '788 Patent, contrary to the majority opinion. By her Employment Agreement, her invention was the property of her employer; she was not the owner, and she could not acquire ownership simply by refusing to sign a separate "assignment" document.

Vivian Hsiun was employed on the basis of a detailed and thorough Employment Agreement, whereby all of her inventions and other product of her employment are owned by the employer. After the '788 Patent application

was filed, of which she is listed as one of three joint inventors, Ms. Hsiun declined to sign the PTO's form of assignment document. This lapse was discovered by the defendants during this litigation, and the defendants moved to dismiss for lack of standing to enforce the patent. The district court granted the motion and the panel majority agrees, finding sua sponte that Ms. Hsiun owns one-third of the '788 Patent.

However, the Employment Agreement placed ownership of the employee's inventions with the employer. In view of the Employment Agreement, a separate assignment document is not necessary to confirm that the employee has no ownership of the '788 Patent. Nor has the employee asserted any such ownership.

## DISCUSSION

The Employment Agreement contains several provisions concerning ownership of inventions made by Ms. Hsiun during her employment, as follows:

1.

### *Section 2.b provides that all inventions made during employment will be disclosed and held in trust and assigned to the Company*

Agreement Section 2.b obligates Ms. Hsiun to disclose and to assign all her right, title, and interest in all inventions that she makes while employed by the Company:

> 2.b. <u>Inventions and Original Works Assigned to the Company</u>. I agree that I will promptly make full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and will assign to the Company all my right, title, and interest in and to any and all inventions, original works of authorship, developments, improvements or trade secrets which I may solely or jointly conceive or develop or reduce

to practice, or cause to be conceived or developed or reduced to practice, during the period of time I am in the employ of the Company. . . .

Empl. Agmt., J.A. 258. On Ms. Hsiun's refusal to sign the PTO's standard assignment form, the PTO accepted the Employment Agreement as showing ownership by the employer. Ms. Hsiun did not object to the procedures in the PTO, and the face of the patent lists AVC Technology, Inc. as "Assignee." Ms. Hsiun did not object, and has never asserted any ownership interest in the '788 Patent.

### 2.

### *Section 2.c states that invention records are the property of the Company*

In conformity with the other provisions on ownership of inventions made by Ms. Hsiun during her employment, the Employment Agreement provides that all invention records are the property of the employer:

> 2.c. <u>Maintenance of Records</u>. I agree to keep and maintain adequate and current written records of all inventions and original works of authorship made by me (solely or jointly with others) during the term of my employment with the Company. The records will be in the form of notes, sketches, drawings, and any other format that may be specified by the Company. The records will be available to and remain the sole property of the Company at all times.

Empl. Agmt., J.A. 259. It is not disputed that the '788 invention was made during Ms. Hsiun's employment. She has asserted no ownership or any other rights to her invention records.

### 3.

### *Section 2.e states the employee's obligation to assist in obtaining patents*

This clause of the Employment Agreement refers to patents on inventions "assigned hereunder" to the employer:

> 2.e.  Obtaining Letters Patent, Copyrights, and Mask Work Rights.  I agree that my obligation to assist the Company to obtain United States or foreign letters patent, copyrights, or mask work rights covering inventions, works of authorship, and mask works, respectively, assigned hereunder to the Company shall continue beyond the termination of my employment, but the Company shall compensate me at a reasonable rate for time actually spent by me at the Company's request on such assistance. . . .

Empl. Agmt., J.A. 259.  The words "assigned hereunder" and the continuing obligations after termination of employment conform to the mutual intent and understanding, of employer and employee, with respect to the Company's ownership of inventions made during her employment.

Ms. Hsiun did not object to the Company's filing of this patent applications naming her as a joint inventor; such filing was authorized by the agreed right of ownership of her inventions.

4.

***Section 2.e provides for action by the employer in absence of the employee's signature on patent documents***

Ms. Hsiun agreed that if her signature is unobtainable for "inventions or other rights assigned to the Company," the Company may act in her stead:

> 2.e.  [continued]. . . .  If the Company is unable because of my mental or physical incapacity or for any other reason to secure my signature to apply

for or to pursue any application for any United States or foreign letters patent, copyrights, or mask work rights covering inventions or other rights assigned to the Company as above, then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney in fact, to act for and in my behalf and stead to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of letters patent, copyrights, and mask work rights with the same legal force and effect as if executed by me. . . .

Empl. Agmt., J.A. 259–60. This provision was a basis of the Company's prosecution of the '788 application, and issuance of the '788 Patent naming Ms. Hsiun as a joint inventor and AVC Technology as assignee.

5.

### Section 2.b requires the employee to hold all inventions in trust for the Company

2.b. I agree that I . . . will hold in trust for the sole right and benefit of the Company, and will assign to the Company all my right, title, and interest in and to any and all inventions, . . . during the period of time I am in the employ of the Company.

Empl. Agmt., J.A. 258. My colleagues on this panel concede that the trust provision of the Employment Agreement may apply, Maj. Op. at 7, but nonetheless hold that the trust provision is ineffective to establish that Ms. Hsiun held her inventions in trust "for the sole right and benefit of the Company." My colleagues state that it is necessary for the beneficiary to sue the trustee in order to obtain the benefit of the trust. No supporting authority is cited, or relates to these facts.

The parties' briefs discuss a California case in which the court held that a trust was not created on a dying man's oral instruction to pay his hospital bill and dispose of his funds, the court stating in *Monell v. College of Physicians & Surgeons of San Francisco,* 198 Cal. App. 2d 38, 48–49 (1961), that "it is essential to the creation of a valid express trust that some estate or interest should be conveyed to the trustee and, when the instrument creating the trust is other than a will, that such estate or interest must pass immediately, although the enjoyment of the *cestui* may commence in the future." The *Monell* court held that the oral instruction did not create a trust when the attempted disposition was testamentary in nature, *id.* at 51, and that the disposition had to comply with the formalities of wills. *Id.* To the extent that the *Monell* case is relevant to the trust provision of the Employment Agreement, it supports the immediate conveyance of inventions to the trust, for the benefit of the Company, in accordance with the signed Employment Agreement.

The panel majority also states that under California law the beneficiary of the trust is not the real party in interest. However, California law accords with the general law of trusts, as represented by *Kadota Fig Ass'n of Producers v. Case-Swayne Co.*, 73 Cal. App. 2d 796, 801 (1946) ("The real parties in interest are the beneficiaries under the business agreement, and not the trustees or directors."). Ms. Hsiun is the trustee of her inventions, which vest in trust immediately on creation of the invention. The employer is the beneficiary of her inventions as established by the Employment Agreement. The beneficiary is not denied its beneficial rights if the trustee is absent or inactive. *See id.* ("The reason for requiring an action to be prosecuted in the name of the real parties in interest (Code Civ. Proc., § 367) is to save the defendants from a multiplicity of suits . . . .").

At a minimum, the trust provision further demonstrates the mutual intent and understanding that Ms. Hsiun's inventions made during her employment are for the sole benefit of the employer.

6.

### Section 2.e provides a "waiver and quitclaim" of infringement claims of patents "assigned hereunder"

The Employment Agreement contains the following waiver and quitclaim provision:

> 2.e. [continued] . . . I hereby waive and quitclaim to the Company any and all claims, of any nature whatsoever, which I now or may hereafter have infringement of any patents, copyrights, or mask work rights resulting from any such application assigned hereunder to the Company.

Empl. Agmt., J.A. 260.

The waiver and quitclaim provisions comport with the mutual intent and understanding that Ms. Hsiun retained no ownership of patents on her inventions "assigned hereunder to the Company." The quitclaim assures that any rights the grantor had, are transferred to the grantee of the property. California precedent is clear. *E.g., City of Manhattan Beach v. Superior Court*, 914 P.2d 160, 164 (1996) ("A quitclaim deed transfers whatever present right or interest the grantor has in the property."); *see generally,* "Quitclaim," Black's Law Dictionary (4th ed. 1968) (a quitclaim is "intended to pass any title, interest, or claim which the grantor may have in the premises").

The panel majority states that since the '788 Patent was not assigned to the Company, "the quitclaim provision has no application." Maj. Op. at 9. To the contrary: if indeed the patent was not individually assigned in a

special document, the "quitclaim to the Company" assures transfer of the property to the Company.

A quitclaim does not require that the property was already assigned, for in such case no quitclaim would be needed. However, the quitclaim does require that "any and all claims" that may "now or hereafter" exist, are "assigned hereunder to the Company."

This provision further renders impossible that Ms. Hsiun now owns one-third of the '788 Patent, for any such ownership was quitclaimed to the employer.

7.

### *Section 5 requires the employee to execute all documents needed to carry out the Agreement*

The record before us does not explain why Ms. Hsiun refused to sign the provided PTO assignment form, for the Employment Agreement is explicit as to the employee's obligations to execute any required documents:

> 5. <u>Representations</u>. I agree to execute any proper oath or verify any proper document required to carry out the terms of this Agreement. I represent that my performance of all the terms of this Agreement will not breach any agreement to keep in confidence proprietary information acquired by me in confidence or in trust prior to my employment by the Company. I have not entered into, and I agree I will not enter into, any oral or written agreement in conflict herewith.

Empl. Agmt., J.A. 260–61.

Throughout this litigation, there is no assertion by Ms. Hsiun of any ownership interest in the '788 Patent, or

any negation of her obligations set forth in the Employment Agreement.[1]

8.

***Other provisions of the Employment Agreement comport with the mutual understanding of employer ownership of employee inventions***

Several other provisions of the Employment Agreement relate to inventions, and further implement the understanding of employer ownership of the employee's work product:

**Section 3** prohibits conflicting future employment.

**Section 4** provides for ownership by the Company of all documents and property created by the employee.

**Section 6.b** states that this is the entire agreement and cannot be changed except "in writing signed by the party to be charged."

**Section 6.c** provides for severability.

**Section 6.d** binds the employee's heirs and executors for the benefit of the Company, its successors, and its assigns.

**Section 6.e** provides that the Agreement survives the termination of employment, and benefits the Company's successors and assigns.

---

[1]    The panel majority states that "the terms of the Employment Agreement provide otherwise," the "otherwise" being "unambiguous provisions" in the Employment Agreement purportedly negating assignment to the employer. Maj. Op. at 9. No citation is offered, and I have searched in vain for any such unambiguous provision.

**Section 7** requires the employee to identify all pre-employment inventions—there were none.

It is inconceivable that the parties intended that unless a separate assignment document was signed as to each and every aspect of the employee's work product, the provisions of the Employment Agreement would not apply.

9.

### *Section 6.a of the Agreement states that California law applies*

California contract law provides:

Cal. Civ. Code § 1643: A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties.

The record contains no challenge to the mutual intent and understanding of the parties to the Employment Agreement. The provisions of the Employment Agreement demonstrate, over and over, the intent and understanding that Ms. Hsiun's inventions made as an employee are the property of the employer. There are no contrary provisions, and no contrary evidence was presented in this action.

Every contract provision, and the entirety of the Employment contract, show this mutuality of intent. The intention of the parties must be respected and "intent is to be inferred, if possible, solely from the written provisions of the contract." *People ex. rel. Lockyer v. R.J. Reynolds Tobacco Co.,* 107 Cal. App. 4th 516, 525 (2003). California law provides no contrary authority, and none was asserted in this case.

It is not reasonable now to hold that the Employment Agreement fails in its intended purpose, for every provi-

sion of the Agreement accords with and implements the intent that the employee's inventions are the property of the employer.

10.

### *The Delaware Chancery Court quitclaimed and assigned the '788 Patent to the plaintiff*

The record further demonstrates that ownership of the '788 Patent, by Ms. Hsiun's employer and its successors, was recognized in corporate proceedings in Delaware.

After a challenge to the transfer of the '788 Patent, a Receiver was appointed by the Chancery Court, who held as follows:

> I, Joseph Cicero, . . . have quitclaimed, assigned, transferred, set over and conveyed and do hereby quitclaim, assign, transfer, set over and convey unto Advanced Video Technologies LLC, a New York limited liability company ("Assignee"), its successors, and assigns, any and all right, title, and interest to United States Patent No. 5,781,788 (the "Patent") held and enjoyed by Assignor, for the entire term of the Patent, including any reissues, reexaminations, and extensions thereof, including the right to sue for and recover damages in respect of past acts of infringement. This assignment includes, but is not limited to, all Assignor's right to all income, royalties, damages and payments now or hereafter due and payable, and in and to all causes of action, either in law or in equity, and the right to sue and counterclaim for and collect past and continuing damages for infringement. The right, title and interest conveyed in this Assignment is to be held and enjoyed by Assignee and Assignee's successors and assigns as fully and exclusively as it would have been held

and enjoyed by Assignor had this assignment not been made.

[signed]  Joseph B. Cicero, Esq.,      Date: 6/5/15
Receiver for AVC Technology, Inc.

J.A. 130.  The record does not show any appeal by any person or other entity from the Delaware Court's determination, or any challenge to or dispute with this establishment of ownership of the '788 Patent by Advanced Video Technologies.

11.

### *Federal Circuit precedent does not contravene the Employment Agreement*

*Ethicon Inc. v. U.S. Surgical Corp.,* 135 F.3d 1456 (Fed. Cir. 1998) does not support the position that Ms. Hsiun owns one-third of the '788 Patent.  The situations and rulings are widely different.  In *Ethicon,* a consultant who had not agreed to assign his inventions made a contribution to a claim, and the court held that the consultant owned an undivided interest in the patent.  *Id.* at 1464.  Here, in contrast, ownership of Ms. Hsiun's inventions is established by the Employment Agreement.  Unlike Ms. Hsiun's contractual agreement, in *Ethicon* there was no employment agreement, no agreement as to ownership of inventions, no holding in trust for the employer, no waiver and quitclaim to the employer.  The ruling in *Ethicon* does not govern ownership of Ms. Hsiun's inventions.

Nor does the ruling in *Arachnid, Inc. v. Merit Industries, Inc.*, 939 F.2d 1574 (Fed. Cir. 1991) apply to this case.  In *Arachnid* a consultant had agreed by contract that his inventions "will be assigned" to the company, but he did not execute an assignment.  The court held that although equitable title may have been acquired by the company, legal title was needed before damages could be obtained.  *Id.* at 1579.  The gaps that the court perceived

in the consulting agreement in *Arachnid* are filled in the Employment Agreement signed by Ms. Hsiun. Her Agreement not only provides for ownership by the employer of all inventions made by the employee, but imposes a trust and implements a quitclaim in favor of the employer. *See Akazawa v. Link New Tech. Int'l, Inc.,* 520 F.3d 1354, 1356 (Fed. Cir. 2008) ("[T]here is nothing that limits assignment as the only means for transferring patent ownership. . . . [O]wnership of a patent can be changed by operation of law.").

Ms. Hsiun's Employment Agreement is directly controlled by contract law. The Employment Agreement that she signed established ownership by the employer of the '788 Patent by way of clear contract provisions implementing the intent and understanding and agreement of employer and employee, as a condition of the employment. There is no ambiguity, and Ms. Hsiun asserts no ownership in the '788 Patent.

## CONCLUSION

The Employment Agreement established the terms and conditions of Ms. Hsiun's employment. These terms and conditions include ownership by the employer of all inventions made by the employee during her employment. My colleagues' award to Ms. Hsiun of one-third of the '788 Patent cannot be supported, under any view of any law. I respectfully dissent.